IN RE DEANA E. ET AL.*
(AC 20421)

Foti, Spear and Pellegrino, Js.

Argued October 16—officially released December 26, 2000

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Reine C. Boyer*, for the appellant (respondent father).

*Jane R. Rosenberg*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

FOTI, J. The respondent father, Magdiel F.,[1] appeals from the judgments of the trial court terminating his parental rights with respect to his three children, D, Y and M. On appeal, the respondent claims that (1) his due process rights were violated because the department of children and families (department) failed to give him adequate notice of either the neglect or the termination proceedings against him and (2) the court improperly proceeded to the dispositional phase of the termination proceeding because its finding that the respondent had abandoned his children was improper. We affirm the judgments of the trial court.

In its comprehensive November 15, 1999 memorandum of decision,[2] the court recited the following facts and procedural history. On August 22, 1995, the peti-

---

[1] The court also terminated the parental rights of the respondent mother. She has not appealed from these judgments. We refer in this opinion to the respondent father as the respondent.

[2] The court's memorandum of decision also addressed the termination of the parental rights of the respondent mother and a different father with respect to three other children. The opinion in the appeal by that father as to the termination of his parental rights with respect to the other children is reported as *In re Deana E.*, 61 Conn. App. 197, 763 A.2d 45 (2000).

tioner, the commissioner of children and families (commissioner), filed neglect petitions alleging that the respondent denied his three children proper care and attention physically, educationally, emotionally or morally, and that the respondent permitted his children to live under conditions, circumstances or associations injurious to their well-being. On October 6, 1995, the court ordered that temporary custody of the children should be with the commissioner. On February 4, 1997, the court committed the children to the care and custody of the commissioner as neglected children. On August 19, 1998, the commissioner filed petitions for the termination of the respondent's parental rights. The petitions alleged that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and needs of the three children, he could assume a responsible position in their lives. The petitions also alleged the absence of an ongoing parent-child relationship that ordinarily develops as a result of a parent having met, on a continuing day-to-day basis, the physical, emotional, moral or educational needs of the children. The commissioner alleged that allowing further time for the reestablishment of the parent-child relationship would be detrimental to the best interests of the children. See General Statutes § 17a-112 (c) (3) (D).[3] Separate from the allegation that the court should terminate the respondent's parental rights because he failed to achieve personal rehabilitation, the commissioner alleged that the court should

[3] General Statutes § 17a-112 (c) (3) (D) provides that the court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

terminate the respondent's parental rights because he abandoned his children by failing to maintain a reasonable degree of interest, concern or responsibility for their welfare. See General Statutes § 17a-112 (c) (3) (A).[4] The court terminated the respondent's parental rights in his children on November 16, 1999, and this appeal followed.

The court found that the respondent's relationship with the mother of his children began in the early 1980s and ended in the early 1990s. He abused her physically and emotionally. The respondent incurred a long prison record beginning in 1981. He began serving a six year sentence in 1991, and, after being released on probation, subsequently was incarcerated between 1995 and 1997. He was incarcerated once more in 1998 and released in November, 1999. The respondent has not played a role in his children's lives. He did not attempt during his incarceration to locate, contact or visit his children. He also made little or no effort after his incarceration to spend time with them. At the time of the termination proceedings, D was thirteen years old, Y was eleven years old and M was nine years old.

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995). The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

---

[4] General Statutes § 17a-112 (c) (3) (A) provides that the court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that "[t]he child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . ."

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. *In re Michael M.*, [29 Conn. App. 112, 121, 614 A.2d 832 (1992)]; *In re Megan M.*, 24 Conn. App. 338, 342, 588 A.2d 239 (1991) . . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, [181 Conn. 217, 222, 435 A.2d 24 (1980)]; nor do we retry the case or pass upon the credibility of the witnesses. *In re Christine F.*, 6 Conn. App. 360, 366–67, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986). Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995). In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . . *In re Danuael D.*, 51 Conn. App. 829, 835–37, 724 A.2d 546 (1999); *In re Roshawn R.*, 51 Conn. App. 44, 51–52, 720 A.2d 1112 (1998). It is thus possible for a court to find that a statutory ground for termination of parental rights exists but that it is not in the best interests of the child to terminate the parental relationship, although removal from the custody of the parent may be justified. *In re Baby Girl B.*, 224 Conn. 263, 279–80, 618 A.2d 1 (1992).

"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evi-

dence that the continuation of the parents' parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in General Statutes (Rev. to 1997) § 17a-112 (e) [now § 17a-112 (d)]."[5] (Internal quotation marks omitted.) *In re Denzel A.*, 53 Conn. App. 827, 831–33, 733 A.2d 298 (1999).

I

The respondent claims that his due process rights were violated because he was not given adequate notice of the neglect and termination proceedings against him,

---

[5] General Statutes § 17a-112 (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

The court made the mandatory findings in its memorandum of decision. They have not been challenged on appeal.

and that we should reverse the court's judgments on this account. We disagree.

The court concluded that the commissioner failed to show, by clear and convincing evidence, that the respondent failed to achieve personal rehabilitation within the meaning of General Statutes § 17a-112 (c) (3) (B). The court found it "particularly disturbing" that the department possessed the respondent's incarceration record, yet failed to give the respondent actual notice of the neglect proceedings against him. The commissioner claimed that during the respondent's incarceration, he was provided notification of the neglect proceeding by publication in the newspaper. We look unfavorably on this type of notice. We conclude, as did the trial court, that the respondent lacked an opportunity to achieve personal rehabilitation because he lacked the opportunity to participate in the neglect proceedings. As a result, he did not know what he needed to accomplish to achieve personal rehabilitation for purposes of the proceedings against him.[6]

The fact that the respondent's due process rights may have been violated because of the lack of notice of the neglect proceedings does not, however, impact the court's finding "by clear and convincing evidence that the respondent abandoned his children long before [the department] ever became involved with the family." An adjudication of neglect is not a prerequisite to an order terminating parental rights on the basis of abandonment.[7] See General Statutes § 17a-112 (c). Lack of

[6] The commissioner argues that the respondent failed to appeal from the adjudication of the neglect proceeding and that he had "constructive notice" of that proceeding. We find this argument to be without merit. Because the respondent lacked adequate notice, he consequently lacked the opportunity to make a timely appeal. We note, however, that the respondent, even after being represented by counsel, never filed a motion to open or set aside the judgment in the neglect proceedings.

[7] We are mindful of the respondent's argument that if he had received notice of the neglect proceedings, and subsequently had achieved rehabilitation, the commissioner might never have filed petitions for termination of

proper notice as to the neglect proceedings is irrelevant to the present termination proceedings.

The respondent also claims that his due process rights were violated because he was not given notice of the termination proceedings. We disagree.

On March 12, 1999, the court appointed counsel to represent the respondent. The respondent appeared before the court on June 10, 1999, for a preliminary hearing concerning the petitions for termination. Counsel for the respondent lacked notice of the hearing, and the court continued the matter, with notice to counsel, until October 18, 1999. The hearing on the petitions lasted five days, until October 22, 1999. The record discloses that the respondent and his counsel attended and fully participated in the proceeding and contested the department's petitions.[8] Nothing in the record suggests that the respondent lacked an opportunity either to be heard or to defend himself during the proceedings. Because the respondent's actions clearly indicate that he submitted to the jurisdiction of the court, he waived any claim of lack of personal jurisdiction. See *Pitchell* v. *Hartford*, 247 Conn. 422, 432–33, 722 A.2d 797 (1999); *In re Baby Girl B.*, supra, 224 Conn. 293.

II

The respondent next claims that there was insufficient evidence to support the court's finding of abandonment, and, therefore, the court improperly proceeded to the dispositional phase of the termination proceeding.[9] We disagree.

___

his parental rights on the basis of abandonment. That argument delves into speculation, which neither we as an appellate court, nor the trial court, may properly consider.

[8] The respondent objected to the continuation of the termination proceedings because he lacked notice of the neglect proceedings. He also argued that he lacked notice of the termination proceedings, but never raised a claim that the court lacked personal jurisdiction.

[9] The respondent also claims that the court improperly proceeded to the dispositional phase of the termination proceeding to determine if termination

"Abandonment focuses on the parent's conduct. . . .
A lack of interest in the child is not the sole criterion
in determining abandonment. . . . General Statutes
17a-112 (b) (1) [now § 17a-112 (c) (3) (A)] defines aban-
donment as the fail[ure] to maintain a reasonable degree
of interest, concern or responsibility as to the welfare
of the child . . . . Attempts to achieve contact with a
child, telephone calls, the sending of cards and gifts,
and financial support are indicia of interest, concern
or responsibility for the welfare of a child. . . . Aban-
donment occurs where a parent fails to visit a child,
does not display love or affection for the child, does
not personally interact with the child, and demonstrates
no concern for the child's welfare. . . .

"Section 17a-112 (b) (1) does not contemplate a spo-
radic showing of the indicia of interest, concern or
responsibility for the welfare of a child. A parent must
maintain a reasonable degree of interest in the welfare
of his or her child. Maintain implies a continuing, rea-
sonable degree of concern. . . .

"The commonly understood general obligations of
parenthood entail these minimum attributes: (1)
express love and affection for the child; (2) express
personal concern over the health, education and general
well-being of the child; (3) the duty to supply the neces-
sary food, clothing, and medical care; (4) the duty to
provide an adequate domicile; and (5) the duty to fur-
nish social and religious guidance." (Citations omitted;
internal quotation marks omitted.) *In re Kezia M.*, 33
Conn. App. 12, 17–18, 632 A.2d 1122, cert. denied, 228
Conn. 915, 636 A.2d 847 (1993).

A court may grant a petition to terminate parental
rights after finding by clear and convincing evidence

---

was in the best interests of the respondent's children because the respondent
lacked notice of the adjudicative phase of the proceedings against him.
In light of our conclusion in part I of this opinion, we need not address
that further.

that (1) the department has made reasonable efforts to locate the parent and reunify the child with the parent, "unless the court . . . has determined at a hearing pursuant to subsection (b) of section 17a-110 . . . that such efforts are not appropriate"; General Statutes § 17a-112 (c) (1); (2) the parent has abandoned the child; and (3) termination is in the best interest of the child. See General Statutes § 17a-112 (c).[10] As to the first of these requirements, the court noted that, pursuant to General Statutes § 17a-110 (b), a hearing was held by the court on February 23, 1999. At that hearing, the court "made the requisite finding that further efforts to unify" the parent and children were not appropriate.[11]

The record supports the court's decision that the respondent abandoned his children. While the respondent's imprisonment alone does not constitute abandonment, it does not excuse his failure to attempt either to contact or to visit with his children. The record clearly demonstrates that, while in prison, the respondent made absolutely no effort to determine where his children were, to contact them or to have them visit with him. Even during the time when he had been released from prison, the respondent made few efforts to contact his children, and any visits he conducted with them were very brief. His efforts are best characterized as minimal. The court's findings support its conclusion that the respondent manifested no reasonable degree of interest, concern or responsibility for the children. We conclude that the findings of subordinate fact amply support the court's conclusion on the issue of abandonment and that the court did not apply an erroneous rule of law.

The respondent also claims that the court improperly concluded that it was in the best interests of the children

---

[10] See footnote 4.

[11] The court's adoption of the February 23, 1999 finding, which the court made pursuant to § 17a-110 (b), is not challenged on appeal.

to terminate his parental rights.[12] The court's findings in this regard are supported by the evidence in the record. The three children suffer from post-traumatic stress syndrome, along with other psychological and behavioral problems. The children are living in a secure foster home, and are attending therapy and counseling sessions. As a result, the children are coping with their problems and have bonded with their foster family. Furthermore, the children have requested to remain with their new foster parents, and their foster parents are contemplating adoption.

We conclude that the court's findings support its conclusions, are legally correct and, thus, are not clearly erroneous.

The judgments are affirmed.

In this opinion PELLEGRINO, J., concurred.

SPEAR, J., concurring. I agree with the reasoning and the result in this case. I heartily endorse our disapproval of the newspaper notice that was given to the respondent when, as the trial court found, the department's "own records clearly showed he was in prison." I write separately to express my further disapproval of the commissioner's cavalier disregard for the truth in the sworn termination petitions. Although a program supervisor signed and swore to the truth of all of the allegations in the petitions, four allegations are completely baseless.

First, the petitions alleged that the department "made reasonable efforts to locate" the respondent. That sworn allegation cannot be reconciled with the department's resort to newspaper notice of the neglect proceedings despite the fact that the respondent's

---

[12] The commissioner states that the respondent has not challenged the finding that termination was in the best interests of the children. We conclude that the issue was at least implicitly raised.

incarceration record was in the department's file and showed that he was in prison. It is inconceivable that this allegation could be made when the department failed to use the information in its own file to locate the respondent. Such a failure is the antithesis of reasonable efforts.

Second, the petitions alleged that the department "made reasonable efforts to reunify" the children with the respondent. Nothing in the record indicates any department activity that remotely resembles such an effort. Accordingly, the court found that the department "failed to offer or provide services to [the respondent]." This allegation should not have been made because it was clear that the department had done absolutely nothing.

The third troubling allegation is that the respondent was "unable or unwilling to benefit from reunification efforts." Because there were no such efforts, this claim simply compounds the wrong.

The fourth and most egregious allegation is that the respondent was "provided *specific steps* to take to facilitate the return of the [children] and the [respondent] failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the [children, he] could assume a responsible position in the life of the [children]." (Emphasis added.) The department did not provide specific steps to the respondent. It did not provide anything.

The court stated: "Presumably, if [the respondent] had been located by [the department] in prison and given actual notice of the proceedings, he would have taken part in the neglect case and been represented by counsel. He also would have been given steps which would have provided him with a clear road map of what he would have needed to accomplish in order to be

considered rehabilitated. Given [the department's] failure to provide notice to [the respondent] even though its own records clearly showed he was in prison and its *failure to provide steps* or visitation, it would be fundamentally unfair for this court to make a finding that [the respondent] has failed to rehabilitate." (Emphasis added.)

This is not a case where the commissioner simply was unable to satisfy the burden of proof. My concern is the complete lack of any facts upon which to base these four allegations. I am aware of the department's daunting caseload and the need to use form petitions, such as the one used in this case. That need, however, does not mean that a department supervisor should go through the form, check off all possible allegations, regardless of the facts in the department's file, and swear to their veracity. Such action is deplorable and the department should take steps to prevent it from occurring again.