### IN RE TYSCHEICKA H.*
(AC 20369)

Lavery, C. J., and Spear and Hennessy, Js.

Argued September 20—officially released December 5, 2000

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*R. J. Rigat*, with whom, on the brief, was *Matthew T. Gilbride*, for the appellant (respondent mother).

*Bette L. Paul*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman* and *Benjamin Zivyon*, assistant attorneys general, for the appellee (petitioner).

*Howard J. Haims*, for the minor child.

*Opinion*

HENNESSY, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights in her daughter.[1] On appeal, the respondent claims that the court improperly found that the petitioner, the commissioner of children and families (commissioner), proved by clear and convincing evidence that (1) the respondent had failed to achieve sufficient personal rehabilitation pursuant to General Statutes

---

[1] The court, in addition to terminating the respondent mother's parental rights, also denied her motion for revocation of commitment and her petition to transfer guardianship. The respondent father consented to the termination of his parental rights and is not a party to this appeal. We refer to the respondent mother as the respondent.

§ 17a-112[2] and (2) the termination of the respondent's parental rights was in the child's best interest. We disagree and affirm the judgment of the trial court.

The court reasonably could have found the following facts. The respondent, who was seventeen years old at the time, gave birth to the child on February 14, 1997. In May, 1997, the child suffered acute febrile illness and shock due to the loss of fluids from vomiting and diarrhea and was admitted to the hospital. Shortly after the child's release from the hospital, a visiting nurse assigned to aid the respondent in caring for the child reported that the respondent did not have either a crib or diapers for which to clothe the child. During the three weeks between the time she left the hospital in May and the filing of the neglect petition at the end of June, the child had lost one pound, and, when visited by the nurse, the respondent refused to show the nurse the formula that she gave the child.

On June 30, 1997, the petitioner filed a neglect petition and obtained temporary custody of the child. On September 4, 1997, the court found the child to be neglected

---

[2] General Statutes § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section 17a-111b that such efforts are not appropriate, (2) that termination is in the best interest of the child, and (3) that . . . (B) the parent of a child who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . and such parent has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

and committed her to the custody of the petitioner for a period of one year. This commitment has been extended by the court every year since that time.

The court, in its decision, recommended that the respondent take certain steps to correct the problems that resulted in the child's removal from the respondent's care. These steps included participating in parenting programs, visiting the child, who had been placed in a foster home, successfully completing substance abuse treatment, refraining from the use of illegal drugs, securing and maintaining adequate housing, and submitting to a court-ordered psychological evaluation that includes a clinical assessment and a parent-child evaluation. Throughout the year, following the commitment of the child to the commissioner, the respondent's compliance with the court's recommendations were, in the words of her own attorney, "less than exemplary." As a result, on September 29, 1998, the petitioner filed a petition in accordance with § 17a-112 (c) (3) (B) (1) to terminate her parental rights. Thereafter, the court rendered judgment terminating the respondent's parental rights. This appeal followed.

I

The respondent first claims that the court, in the adjudicatory phase of the hearing, improperly found that the petitioner proved by clear and convincing evidence that the respondent failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child.

In January, 1999, the respondent entered Coventry House.[3] The respondent argues that since she entered

---

[3] Coventry House is a facility with an inpatient drug program for pregnant women and women with small children.

Coventry House, she has progressed in developing her ability to care for her child. She contends that the court has not given her progress the proper weight in assessing whether rehabilitation is "foreseeable within a reasonable time." We disagree.

"The hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child." (Citation omitted.) *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995).

Section 17a-112 (c) (3) (B) would allow parental rights to be terminated "if by clear and convincing evidence it is established that the respondent's level of rehabilitation falls short of the level which would encourage the belief that *within a reasonable time, considering the age and needs of the child,* the parent could assume a responsible position. . . . Thus, the statute requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time." (Emphasis in original; internal quotation marks omitted.) *In re Hector L.*, 53 Conn. App. 359, 366–67, 730 A.2d 106 (1999). "In making the adjudicatory determination, the court is limited to considering events preceding the filing of the termination petition or the latest amendment." (Internal quotation marks omitted.) *In re Kasheema L.*, 56 Conn. App. 484, 487, 744 A.2d 441, cert. denied, 252 Conn. 945, 747 A.2d 522 (2000). In the dispositional phase of the termination hearing, "the court can consider all events occurring prior to the date of

the dispositional hearing, including those occurring after the filing of the termination petition." (Internal quotation marks omitted.) Id., 488.

In reaching a conclusion as to whether the prospects for rehabilitation can be realized, "the trial court's inquiry requires the determination of both the present and past status of the child, and obtaining a historical perspective of the respondent's child caring and parenting abilities. . . . A determination by the trial court under [the statute] that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Citations omitted; internal quotation marks omitted.) *In re Tabitha P.*, supra, 39 Conn. App. 361.

The following additional facts are relevant to our disposition of this claim. After reviewing the respondent's parenting abilities from September 4, 1997, the date the court found the child to be neglected, to September 29, 1998, the date the petitioner filed the petition to terminate parental rights, the court found little improvement in the respondent's ability to parent and provide for the child.

During the period of time when the child was in foster care, the respondent was referred to a number of social service programs, including counseling, job training and a general equivalency diploma (GED) program, but she failed to take full advantage of these opportunities. For example, the respondent attended a family connections program with Catholic Family Services, which monitored her visits with her child, but the agency reported that the respondent did not show sensitivity to her child's needs. She did not benefit from the parenting programs, she continued to abuse drugs and she lacked either the housing or income necessary for her care of

the child. In addition, the respondent joined a drug treatment center, but tested positive for marijuana several times between February and October, 1998. She once tested positive for phencyclidine[4] and for cocaine. The respondent also failed to participate in or benefit from five other parenting, substance abuse or GED programs. Moreover, on occasion, the respondent arrived late for visits with the child and, at times, appeared to be under the influence of drugs. The court found that the respondent's level of rehabilitation fell short of that required by the statute at the time the petition to terminate her parental rights was filed.

On the basis of the evidence before the court, the court found that rehabilitation was not foreseeable within a reasonable time. We conclude that the court's finding that the respondent failed to achieve sufficient personal rehabilitation was not clearly erroneous.

## II

The respondent next claims that the court improperly found that termination of her parental rights was in the child's best interest. Specifically, the respondent argues that after the petition to terminate her parental rights was filed, she voluntarily entered Coventry House, participated in its programs and made sufficient progress in rebuilding her life to demonstrate to the court that she could assume a responsible position in the child's life within a reasonable time. The respondent contends that the need for permanency in the child's life can be achieved through long-term foster care or a transfer of guardianship to the foster parent, rather than a termination of parental rights. She argues that this would provide the child with the "best of both worlds," that is, a safe home and the maintenance of the connection between the child and her natural mother.[5]

---

[4] Phencyclidine is a tranquilizer known as "angel dust."

[5] The foster parent who expressed her desire to adopt the child offered the respondent visitation with the child after adoption. The foster parent did not agree to accepting a transfer of guardianship.

"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [General Statutes] § 17a-112 (d).[6] On appeal, we will disturb the findings of the trial court in both the adjudication and disposition only if they are clearly erroneous." *In re Tabitha P.*, supra, 39 Conn. App. 361–62.

In January, 1999, the respondent voluntarily entered Coventry House. Shortly thereafter, the respondent gave birth to her second child. While in the facility, the

---

[6] General Statutes § 17a-112 (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

respondent participated in a series of programs that addressed drug and alcohol abuse, parenting and money management. The respondent also participated in counseling. Her progress while a resident at Coventry House provides the basis for the respondent's argument that her parental rights should not have been terminated. The court, while recognizing that the respondent had made progress, determined that more time was needed and more had to be done to address fully the respondent's problems. It concluded that the termination of the respondent's parental rights was in the best interest of the child.

The court considered and made written findings regarding the factors set forth in § 17a-112 (d).[7] The petitioner made a host of services available to facilitate the reunion of the child with the respondent, including one that addressed the respondent's drug and alcohol abuse. The petitioner arranged and made available regular visitation, parenting programs and counseling. Clear expectations for the respondent were set forth, but not met. The child's age and emotional ties with the respondent and the foster parent were reviewed, and the frequency and quality of the respondent's visits with the child were also considered.

The court found that the child, who was now approaching four years of age and had been in foster care for all but four months of that time, needed a permanent and stable environment. This need was also recognized by Nancy Randall, a court-appointed psychologist, who evaluated the respondent. Randall concluded that "[t]here are enough concerns about [the respondent's] future ability to provide appropriate care for her children that it is not advisable to allow her daughter to wait the amount of time needed to further assess this. . . . [The child] has already been in care

---

[7] See footnote 6.

too long to further delay her ability to move into a permanent home. It is recommended that she be freed for adoption and placed in a permanent family as quickly as possible."

Cheryl Ellis, a child services manager at Coventry House responsible for developing a therapeutic child program, supervised the visits between the respondent and her child. She also supervised other activities of the respondent. She arranged treatment at Children's Village,[8] which allowed the respondent to explore her own needs, and further arranged for the respondent to participate in a GED program. Ellis urged the respondent to continue with therapeutic one-on-one counseling, to continue her education and to live in "supported or transitional housing" when she left Coventry House because "she is a young woman without a lot of skills and without a lot of community support."

The respondent expressed her desire, if not intention, to leave Coventry House at the end of the year 2000 and to live independently, relying on her mother and other relatives in her community to help her. The court found that the respondent is not fully prepared to live independently, is without the necessary education for gainful employment and without the therapeutic counseling that would strengthen her ability to remain drug free and to cope with the stresses of caring for two young children. The court also expressed concerns about the ability of the respondent's relatives to give the necessary structure and support for her success. Although the testimony supported the respondent's contention that she had made progress in many areas, the evidence also supported the proposition that she needed more time at Coventry House and more time in a structured living situation in the community.

---

[8] The Children's Village is a facility that provides counseling for many of the residents of Coventry House.

Upon reviewing the detailed decision of the trial court and the evidence contained in the entire record, we conclude that the court's finding that the termination of the respondent's parental rights is in the best interest of the child is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.