# IN RE ASHLEY E.*
## (AC 20803)

Lavery, C. J. and Foti and Dranginis, Js.

Argued January 11—officially released March 13, 2001

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interst therein and upon order of the Appellate Court

*Stuart M. Katz*, with whom was *Barbara M. Schellenberg*, for the appellant (respondent).

*Jonathan D. Elliot*, for the appellee (petitioner).

*Opinion*

FOTI, J. The respondent father appeals from the judgment of the trial court terminating his parental rights with respect to his daughter. On appeal, the respondent claims that the court improperly found that (1) he had abandoned the minor child and (2) termination of his parental rights was in the child's best interest. The respondent also claims that the court improperly allowed the matter to be opened to allow for expert testimony. We affirm the judgment of the court.

The following facts and procedural history are relevant to the appeal. In 1993, the child's mother filed a petition in the Probate Court to terminate the respondent's parental rights. In 1995, the Probate Court terminated the respondent's rights, finding that he had abandoned the child and had engaged in acts of omission or commission that denied the child the care, guidance or control necessary for her physical, educational, moral or emotional well-being. See General Statutes § 45a-717 (f). The respondent appealed from the Probate Court's order to the Superior Court, which, after a trial de novo, found by clear and convincing evidence, pursuant to § 45a-717 (g) (2) (A), that the respondent had abandoned the child because he had failed to maintain a reasonable degree of interest, concern or responsibility as to her welfare. Because the respondent sought visitation rather than custody and because the record contained no evidence of whether it would be in the child's best interest to establish a relationship with her father, the court deferred rendering an order of disposition. The court then ordered psychological examinations of the respondent and the child, who at that time was eleven years old. After receiving the

reports, the court found that terminating the respondent's parental rights would serve the child's best interest.

The minor child was born in 1988 and suffers from severe developmental delays. She has been labeled mentally retarded, attends a special education program and has only recently learned to write her name. The child is happy and affectionate and, since she was six weeks old, has lived in a safe and comfortable home with her mother and her maternal grandparents.

In 1987, while the mother was pregnant with the child and living with the respondent, the respondent used heroin and cocaine on almost a daily basis, stopped contributing toward rent and also used part of the mother's income to buy drugs. After losing his job in 1988, the respondent continued using drugs, even at the hospital when the mother was in the maternity ward with the child. The parties were evicted from their apartment for nonpayment of rent. In May, 1988, the mother called the police because the respondent was drunk and disorderly. He overdosed on drugs and had to be hospitalized. On another occasion, the child began crying and the respondent refused to let the mother attend to the baby. Instead, he got out of bed, returned with a carving knife and stabbed the bedding in an effort to intimidate the mother from attending to the child. At another time, while they were still living together, the mother refused to give the respondent a ride in her car. He grabbed the child and ran away with her while she remained in her car seat. The police later found the baby at the home of the respondent's parents, some two miles away.

When the child was about six weeks old, the mother moved in with her parents, and, on June 9, 1988, the respondent voluntarily stipulated to an order granting custody to the mother. On June 17, 1988, the mother

obtained a restraining order against the respondent. Between September 7, 1988, and February 29, 1992, the respondent was incarcerated seven times, for a total of approximately twenty-seven months, because of his criminal behavior. The respondent has been incarcerated for all but approximately ten months of the child's life and is presently serving a sentence with an earliest projected release date of 2007. While the respondent has been incarcerated, he has maintained written contact with the mother[1] and has attempted to send cards to the child. He has not seen the child since 1991. Indeed, since the child's early years, the respondent has seen her very sporadically, even when he was not incarcerated. The respondent never demonstrated a desire to visit the child while he was incarcerated.

The court, after making the mandatory factual findings as required by § 45a-717 (h), found, on November 23, 1999, by clear and convincing evidence, that the respondent had abandoned the child because he failed to maintain a reasonable degree of interest, concern or responsibility as to her welfare. General Statutes § 45a-717 (g) (2) (A).[2] Thereafter, on April 27, 2000, the court found by clear and convincing evidence that it was in the child's best interest to terminate the respondent's parental rights. General Statutes § 45a-717 (g) (1).[3] The court rendered judgment terminating the respondent's parental rights and this appeal followed.

"The standard for review on appeal [from a termination of parental rights] is whether the challenged find-

---

[1] Many of the respondent's letters during the early and mid-1990s were hostile toward the mother.

[2] General Statutes § 45a-717 (g) provides in relevant part: "[T]he court may approve a petition terminating parental rights . . . if it finds, upon clear and convincing evidence that (1) the termination is in the best interest of the child, and (2) (A) the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . ."

[3] See footnote 2.

ings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995). The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. *In re Michael M.*, [29 Conn. App. 112, 121, 614 A.2d 832 (1992)]; *In re Megan M.*, 24 Conn. App. 338, 342, 588 A.2d 239 (1991) . . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, [181 Conn. 217, 222, 435 A.2d 24 (1980)]; nor do we retry the case or pass upon the credibility of the witnesses. *In re Christine F.*, 6 Conn. App. 360, 366–67, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986). Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995). In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . . *In re Danuael D.*, 51 Conn. App. 829, 835–37, 724 A.2d 546 (1999); *In re Roshawn R.*, 51 Conn. App. 44, 51–52, 720 A.2d 1112 (1998). It is thus possible for a court to find that a

statutory ground for termination of parental rights exists but that it is not in the best interests of the child to terminate the parental relationship, although removal from the custody of the parent may be justified. *In re Baby Girl B.*, 224 Conn. 263, 279–80, 618 A.2d 1 (1992).

"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the parents' parental rights is not in the best interests of the child." (Internal quotation marks omitted.) *In re Denzel A.*, 53 Conn. App. 827, 831–33, 733 A.2d 298 (1999).

I

The respondent first claims that the court improperly found in the adjudicatory phase of the hearing that he had abandoned the child. Specifically, the respondent claims that the court failed to find that any abandonment existed for a continuous period of time not less than one year. As a threshold matter, we note that the respondent correctly points out that the court improperly applied the current version of § 45a-717, which permits a court to terminate a parent's rights without a finding of abandonment for a period of at least one year, rather than the statute that was in effect when the termination petition was filed in 1993, which required a finding of abandonment for such a period. The 1993 version of the statute also contained a provision that permitted waiver of the time period. The respondent alleges that the court failed to find either that the abandonment existed for a continuous period of time not less than one year or that the requirement was or should be waived. Further, the respondent claims that the evidence did not support a finding of abandonment.

At the time the petition for termination was filed, General Statutes (Rev. to 1993) § 45a-717 (f) provided

in relevant part: "[T]he court may approve the petition terminating the parental rights . . . if it finds, upon clear and convincing evidence that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent, *over an extended period of time which, except as provided in subsection (g) of this section, shall not be less than one year:* (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . ." (Emphasis added.)

In December, 1993, subsection (g) of § 45a-717 provided in pertinent part: "The court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of the circumstances surrounding the child that such a waiver is necessary to promote the best interest of the child."

In 1998, the legislature amended § 45a-717 by striking the one year requirement from subsection (f) and deleting subsection (g). Public Acts 1998, No. 98-241, § 9. The parties agree, as do we, that the court should have applied the statute that was in effect when the petition was filed. We note that this issue was never raised at the trial court proceedings, and that the parties agreed to the applicability of the current statute and cited to it. We also note that the respondent never sought to raise as a defense that the alleged abandonment, if any, did not last for more than one year. Moreover, the respondent did not object or move for articulation or rectification on this issue. While we are aware that the court improperly applied the current version of the statute instead of the one that was in effect at the time the petition was filed, we conclude that the error was harmless[4] because the court found, if not explicitly,

---

[4] The respondent asks that we give "plain error" review to this claim. While we note that the particular circumstances of this case lead us to conclude that error was present, that error cannot be classified as "plain error," which by its very definition could never be "harmless" error.

at least implicitly, that the circumstances constituting abandonment existed for more than one year. The court's findings regarding the respondent's drug addiction, indifference to the child's welfare, repeated absences, drunkenness and lack of support covered periods from 1988 through 1993. Since last seeing the child in 1991, the respondent failed to provide guidance in any fashion and demonstrated a total lack of concern, love, interest or responsibility for her. We conclude that the error was harmless and could not likely have affected the result reached.

The respondent also argues that the evidence did not support a finding of abandonment. "Abandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment." (Citations omitted.) *In re Kezia M.*, 33 Conn. App. 12, 17, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993). General Statutes § 45a-717 (f) defines abandonment as "the fail[ure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . ." "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare." (Citations omitted; internal quotation marks omitted.) *In re Kezia M.*, supra, 17–18.

Section 45a-717 (f) does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern. See id., 18.

"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Citations omitted; internal quotation marks omitted.) Id., 18.

In the present case, the record supports the court's decision that the respondent abandoned the child. The findings support the conclusion that the respondent manifested no reasonable degree of interest, concern or responsibility for the child, either when he was incarcerated or when he was not. As we have recently stated, "[w]hile the respondent's imprisonment alone does not constitute abandonment, it does not excuse his failure to attempt either to contact or to visit with his children." *In re Deana E.*, 61 Conn App. 185, 194, 763 A.2d 37 (2000).

After reviewing the court's decision and the record, we conclude that clear and convincing evidence supported the court's conclusion that the respondent had abandoned the child and that the court's findings were not clearly erroneous.

## II

The respondent next claims that the court improperly determined that terminating his parental rights was in the best interests of the child. We disagree.

"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child." *In re Tabitha P.*, supra, 39 Conn. App. 361–62. On appeal,

we will disturb the findings of the trial court only if they are clearly erroneous. *In re Tyscheicka H.*, 61 Conn. App. 19, 26, 762 A.2d 916 (2000).

The court continued the hearing for purposes of disposition, and appointed a psychologist to conduct a clinical evaluation of the child and the respondent to assist in determining whether termination was in the child's best interest. Moreover, the court gave the parties a full opportunity to examine the psychologist.

Our function as an appellate court is to review and not retry the proceeding of the trial court. *In re Quanitra M.*, 60 Conn. App. 96, 106, 758 A.2d 863, cert. denied, 255 Conn. 903, 762 A.2d 909 (2000). The probative force of conflicting evidence is for the trier to determine. Id. The court-appointed psychologist testified as to numerous facts found. On the basis of those findings, he recommended that the court not give the respondent the opportunity to establish a relationship with the child as such a relationship would likely have a harmful effect on her.

The respondent argues that the court "completely ignored other evidence that strongly indicates termination is not in the child's best interest." We defer to the trier of fact's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. The trier is the judge of the credibility of all the witnesses and the weight to be given their testimony, and may accept part, all or none of the testimony. *In re Hector L.*, 53 Conn. App. 359, 366, 730 A.2d 106 (1999). "Where, as here, the record reveals that the trial court's ultimate conclusions are supported by clear and convincing evidence, we will not reach an opposite conclusion on the basis of any one segment of the many factors considered in a termination proceeding." (Internal quotation marks omitted.) *In re Christine F.*, supra, 6 Conn. App. 369–70.

## III

The respondent's last claim is that the court improperly opened the case to allow for expert testimony. He claims that the court, while having authority to order examinations of him and the child, abused its discretion and caused "substantial prejudice" to his case. We conclude that this claim is without merit.

The respondent does not demonstrate prejudice. He did not seek a continuance to obtain contradictory expert testimony. The respondent did not claim, nor can he demonstrate, that the expert was somehow influenced by knowing, if in fact the expert knew, that the court had already found abandonment. The respondent does not claim any bias that cross-examination could not have revealed. Therefore, we conclude that the respondent has not sustained his burden of demonstrating that the court abused it discretion.

The judgment is affirmed.

In this opinion the other judges concurred.