[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I A.
The Department of Children and Families (DCF) petitions to terminate the parental rights of Janice R., the respondent mother of Kapell R. The respondent failed to appear for trial. DCF submitted its case based on exhibits and certain facts to which the parties have stipulated. The parental rights of Kapell's father have previously been terminated based on the father's consent.
The parties have agreed that the court may take judicial notice of the following:
1. Kapell was born on March 1999 at Hartford Hospital.
2. The child's birth certificate does not reflect any information concerning the child's father. CT Page 12223
3. The birth certificate indicates that Kapell was previously known as Charles.
4. At the time of Kapell's birth, his father, Philip B., resided in the Escambia County Prison in Pensacola, Florida.
5. On March 18, 1999 the court, Keller, J., granted DCF temporary custody of Kapell, pursuant to General Statutes § 46b-129 (b)(B). The court also found that DCF had made reasonable efforts to prevent nr eliminate the need for Kapell's removal.
6. The order of temporary custody was based, in part, upon affidavits attesting to the respondent's substance abuse.
7. On March 26, 1999 the court, Dyer, J., confirmed the order of temporary custody after noting that Kapell's father was incarcerated in Florida.
8. By way of a decision filed November 24, 1999 after a neglect trial held on October 4, 1999, the court, Swienton, J., adjudicated Kapell neglected and, by way of disposition, committed him to DCF's care and custody from November 24, 1999 through November 24, 2000.
9. On September 28, 2000 the court, Swienton, J.: (1) extended Kapell's commitment from November 24, 2000 through November 24, 2001; (2) noted that the permanency plan for Kapell was termination and adoption, (3) found that continuing efforts to reunify Kapell with his mother and father were no longer appropriate, and (4) ordered that DCF file a petition to terminate the parental rights of Kapell's parents.
10. On December 5, 2000, DCF filed a petition to terminate the parental rights of the respondent and Philip B. with an initial hearing date of January 2, 2001.
11. On January 2, 2001 the court, Keller, J., confirmed inhand service of the termination petitions on both the respondent and Kapell's father and entered a default against them for failure to appear.
12. On February 8, 2001 the respondent appeared before the court,Swienton, J. The court advised the respondent of her rights, entered a pro forma denial to the petition on her behalf and found that father was a patient at St. Francis Hospital.
13. On March 22, 2001 the court, Swienton, J., granted DCF's Motion to Amend the Petition to include ground "A," abandonment, and ground "D," no on-going parent-child relationship, as to both parents. Previously, the CT Page 12224 petition had alleged only ground "B-1," failure to rehabilitate.[1]
14. On June 20, 2001 the court, Alexander, J., granted DCF's Motion to Disclose Confidential Records and Permit Subsequent Testimony from the following facilities as to both the respondent and Kapell's father:
1. Community Health Services, Hartford, CT
2. The Institute of Living, Hartford, CT
3. Alcohol Drug Recovery Center (ADRC), Hartford, CT
4. Wheeler Clinic-Lifeline, New Britain/Plainville, CT
5. New Life Center, Putnam, CT
6. Crossroads, New Haven, CT
7. Blue Hills Hospital, Hartford, CT
8. Hartford Hospital, Hartford, CT
 9. DepartTtTent of Corrections (including Hartford Community Service), Wethersfield, CT
15. On that same date, June 20, 2001, the court, Alexander, J., ordered the mother to submit to a random blood sample in light of her objection to DCF's motion for a sequential hair analysis.
16. At the time of the court's granting of the order of temporary custody on March 1999, Kapell was five days old.
17. The court, Keller, J., placed Kapell in the DCF's care and custody directly from Hartford Hospital.
18. As of the time of trial Kapell is two years, four months of age.
19. As of the time of trial, Kapell has been in DCF's care for the past two years and four months.
20. Kapell has never been in the care and custody of either parent.
21. At the time of Kapell's birth on March 1999, his father was not a part of the respondent's household.
22. From the inception of this matter, Kapell's father, although he had CT Page 12225 proper legal notice, appeared only once in the underlying neglect proceeding, on September 28, 2000, and not once in the present termination proceeding.
 B.
In a proceeding to terminate parental rights without a parent's consent, brought pursuant to General Statutes § 17a-112, statutory standards require that DCF prove three elements by clear and convincing evidence: (1) that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section 17a-111b that such efforts are not appropriate," (2) that one or more statutory grounds for termination exist, and (3) that termination of parental rights is in the best interests of the child. General Statutes § 17a-112 (j)
"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . . It is thus possible for a court to find that a statutory ground for termination of parental rights exists but that it is not in the best interests of the child to terminate the parental relationship, although removal from the custody of the parent may be justified." (Citations omitted; internal quotation marks omitted.) Inre Ashley E., 62 Conn. App. 307, 311-12, 771 A.2d 160, cert. denied,256 Conn. 910, 772 A.2d 601 (2001).
 II
"[U]nless the court finds . . . that the parent is unable or unwilling to benefit from reunification efforts" or "if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section 17a-111b
that such efforts are not appropriate"; General Statutes § 17a-112
(c)(1) [now § 17a-112 (j)(1)1; "[i]t is axiomatic that in seeking to terminate parental rights, the commissioner must prove by clear and convincing evidence that the department made reasonable efforts to reunify the parent and child as required by [the statute]. . . . The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and CT Page 12226 convincing standard of proof. . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Citations omitted; internal quotation marks omitted.) In re Daniel C., 63 Conn. App. 339,360-61, ___ A.2d ___ (2001)
DCF offered the following services to the respondent: case management; in-patient substance abuse treatment at New Life, in Putnam; Crossroads, in New Haven; Blue Hills Hospital, in Hartford; partial hospitalization at Hartford Hospital; out-patient substance abuse treatment at Alcohol and Drug Recovery Centers; Institute of living; Community Health Services; Life Line Program or Wheeler Clinic, in New Britain; parent aide services through North Central Counseling Services; Klingberg Family Reunification services; visitation and transportation.
As noted supra, on September 28, 2000, the court found that further efforts toward reunification were no longer appropriate. The court finds that prior thereto, DCF used reasonable efforts to reunite the respondent and her son.
 III
DCF seeks to terminate the respondent's parental rights based on three statutory grounds. The first ground the court addresses is the failure of the respondent to be rehabilitated. "Failure of a parent to achieve sufficient personal rehabilitation is one of six statutory grounds on which a court may terminate parental rights pursuant to §17a-112. . . . That ground exists when a parent of a child whom the court has found to be neglected fails to achieve such a degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position in the life of that child.
"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. [The statute] requires the court to find, by clear and convincing evidence, that the level of rehabilitation [she] has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [she] can assume a responsible position in [her] child's life. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the child at issue." (Citations omitted; internal quotation marks omitted.) In reCT Page 12227Sheila J., 62 Conn. App. 470, 479-80, 772 A.2d 244 (2001).
The respondent's problems prompting DCF to take Kapell into custody were her substance abuse, lack of parenting skills and inability to provide a stable home for her child.
The respondent is forty-two years old and has a history of substance abuse dating back to 1995. She left high school in her senior year. She has never been married and has worked only sporadically in her life. She gave birth to Kapell on March 1999. At birth, Kapell's meconium fluid tested positive for cocaine. The respondent admitted that she used cocaine during her pregnancy. She has two older children who were removed from her care, adjudicated neglected and subsequently returned to her care under an order of protective supervision.
Out of a possible 156 visits with Kapell that DCF offered the respondent, she attended only seventy-three.
The respondent has always lived with her male partners or with her parents. She has never lived independently. At the time of the filing of the petition she had been living with her parents for a long period of time. She had failed in several substance abuse programs prior to the filing of the petition. On October 23, 2000, the respondent, however, successfully completed an intensive outpatient program at the Institute of Living and was enrolled in a weekly after care support group.
The respondent still associates with Kapell's father. He is a convicted sex offender who has allegedly committed sexually inappropriate behavior directed to children in his mother's home and sexually offending behavior directed against his own children.
"[A]lthough the respondent [has] demonstrated some efforts and ha[s] taken some steps toward rehabilitation, those efforts [are] too little and too late." In re Sheila J., supra, 62 Conn. App. 481. The respondent is intellectually limited if not mentally retarded. This together with her poor choice of companions, her inability to live independently for an appreciable period of time, and her woefully inadequate parenting skills render her incapable of caring for Kapell, a child born testing positive for prenatal exposure to cocaine and who, therefore, may develop neurobehavioral problems in the future.
By clear and convincing evidence, the court finds that the respondent has failed to achieve such a degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of her son, she could assume a responsible position in his life. CT Page 12228
 IV
DCF also alleges that the respondent's parental rights should be terminated because she has abandoned her son. "Abandonment focuses on the parent's conduct . . . A lack of interest in the child is not the sole criterion in determining abandonment . . . General Statutes [§] 17a-112
(b)(1) . . . defines abandonment as the fail[ure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare.
"Section 17a-112 (b)(1) does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern . . .
"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Citations omitted; internal quotation marks omitted.) In re Deana E.,61 Conn. App. 185, 193, 763 A.2d 37 (2000).
The respondent attended almost half of the visits with her son that DCF scheduled. She attended one administrative case review, arrived after another had been concluded and arrived late for a third. She totally missed one administrative case review. There is no evidence as to whether the respondent acknowledged holidays with Kapell or his birthday. Even had she failed to do so, however, such a failure would have little probative weight given Kapell's infancy. The respondent is indigent and possibly men tally retarded. She has no means to provide material things for her son. The evidence of abandonment is "too vague . . . for a finding to be made on the clear and convincing evidence standard of proof required." In re Passionique T., 44 Conn. Sup. 551, 562, 695 A.2d 1107
(1996). The court finds that DCF has failed to prove abandonment.
 V
CT Page 12229
Finally, DCF claims that the respondent's parental rights should be terminated because there is no ongoing parent-child relationship between the respondent and her son. General Statutes § 17a-112 (j)(3)(D) "provides that the court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that `there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. . . .'
"This part of the statute requires the trial court to undertake a two-pronged analysis. First, there must be a determination that no parent-child relationship exists, and second, the court must look into the future and determine whether it would be detrimental to the child's best interest to allow time for such a relationship to develop. . . . In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. . . . The ultimate question is whether the child has no present memories or feelings for the natural parent. . . . Feelings for the natural parent connotes feelings of a positive nature only." (Citations omitted; internal quotation marks omitted.) In re Jonathan G., 63 Conn. App. 516, 525, ___ A.2d ___ (2001)
In In re Valerie D., 223 Conn. 492, 613 A.2d 748 (1992), however, our Supreme Court further circumscribed the conditions under which parental rights could be terminated based on the grounds of no ongoing parent-child relationship. In Valerie, a child was taken from the mother and placed in foster care within a week of the child's birth. Approximately three and one-half months after the child's birth, DCYS (now DCF) filed a coterminous petition to terminate the mother's parental rights based, inter alia, on the lack of an ongoing parent-child relationship. For over two weeks prior to the filing of the petition, the mother was denied any visitation with her baby until she could produce a note from her physician stating that she was free of communicable diseases. Id., 528. The petitioner's expert testified that there was no parent-child relationship.
The Supreme Court observed that while General Statutes § 46b-129
authorized an order of temporary custody based on a reasonable cause standard of proof, grounds for termination of parental rights must be established by clear and convincing evidence. Under the facts of the case, however, "once the child had been placed in foster care pursuant to the determinations made under § 46b-129, a finding of lack of an ongoing parent-child relationship three and one-half months later was inevitable" under the termination of parental rights statute. Id., 533. CT Page 12230 The court held that it would not "be consistent to read the two statutes together so as to contemplate such a scenario." Id., 534. Thus, the court concluded, General Statutes § 46b-129 and the termination of parental rights statute "cannot be read together so as to permit the custody determinations made under the first statute to lead directly to the termination determination under the second statute." Id., 535.
The Appellate Court has recently distinguished In re Valerie D. where a custodial parent "lapsed into drug use and disappeared for a number of months." In re Shane P., 58 Conn. App. 234, 241, 753 A.2d 409 (2000). In such a circumstance, the court held, it was the parent's conduct rather than the child's being in foster care that resulted in the absence of a parent-child relationship. Id., 241-42.
Kapell has been continuously in DCF custody and in foster care since he was five days old. He is now two years of age. In the absence of evidence to the contrary, the court holds that no amount of periodic visitation, such as those offered by DCF, could have created a parent-child relationship between mother and son. Thus, this case is governed by In reValerie D. DCF has failed to sustain its burden of proof as to this ground.
 VI Mandatory Findings
"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child." (Internal quotation marks omitted.) In re Ashley E., supra, 62 Conn. App. 315. "In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in General Statutes [(Rev. to 1999) § 17a-112 (d) [now § 17a-112 (k)]." (Internal quotation marks omitted.) In re Deana E., supra, 61 Conn. App. 190.
1. Finding regarding the timeliness, nature and extent of servicesoffered, provided, and made available to the parent and the child by achild-placing agency to facilitate the reunion of the child with theparent.
As discussed supra, DCF timely offered the following services to the respondent: case management; in-patient substance abuse treatment at New Life, in Putnam; Crossroads, in New Haven; Blue Hills Hospital, in Hartford; partial hospitalization at Hartford Hospital; out-patient substance abuse treatment at Alcohol and Drug Recovery Centers; Institute CT Page 12231 of living; Community Health Services; Life Line Program or Wheeler Clinic, in New Britain; parent aide services through North Central Counseling Services; Klingberg Family Reunification services; visitation and transportation.
2. Finding regarding whether DCF has made reasonable efforts to reunitethe family pursuant to the Federal Child Welfare Act of 1980, asamended.
As noted supra, on September 28, 2000, the court found that further efforts toward reunification were no longer appropriate. The court finds that prior thereto, DCF used reasonable efforts to reunite the respondent and her son.
3. Finding regarding the terms of any applicable court order enteredinto and agreed upon by any individual or child-placing agency and theparent, and the extent to which all parties have fulfilled theirobligations under such order.
1. Keep all appointments set by or with DCF, of the four administrative case reviews scheduled by DCF prior to the filing of the petition, the respondent missed one, attended one, arrived after another had been concluded and arrived late for another. After the filing of the petition, the respondent failed to appear for a plea hearing and later failed to appear at a judicial pretrial and at an administrative case review, all of which occurred this year.
2. Cooperate with DCF home visits. The respondent, who lives with her parents, cooperated with a rescheduled home visit on September 10, 1998. When DCF has attempted unannounced home visits, the door is frequently unanswered. In 2001, she became increasingly difficult to contact through visits or telephone.
3. Keep children's whereabouts and your whereabouts known to DCF, your attorney and the children's attorney. The respondent kept DCF informed of her address until a few weeks before trial, when she resumed cohabitation with Kapell's father.
4. Sign releases. The respondent has complied with this requirement.
5. No involvement with the criminal justice system. The respondent has complied with this requirement.
6. Maintain the children within the State of Connecticut. The respondent has complied with this order. CT Page 12232
7. Participate in counseling and make progress toward the treatment goals of better parenting and avoidance of substance abuse. After failures in several programs, the respondent completed an intensive outpatient program for substance abuse at the Institute of Living on October 23, 2000 and enrolled in a weekly after care support group. The respondent has not completed a parenting program.
8. Accept and cooperate with in-home support services referred by DCF and make progress toward the identified goals. The respondent failed to comply with this requirement.
9. Successfully complete substance abuse treatment including in-patient treatment if necessary and follow recommendations regarding aftercare treatment, including relapse prevention. As stated supra, after several failures, the respondent completed an intensive outpatient program for substance abuse at the Institute of Living on October 23, 2000 and enrolled in a weekly after care support group. Her attendance in the aftercare program, however, has been sporadic.
10. Submit to random drug testing. The respondent has failed to comply with this requirement both before she entered the Institute of Living program and since completing that program on October 23, 2000.
11. Secure and maintain adequate housing and legal income. The respondent has failed to comply with this requirement. She lives in her parents' home and shares one bedroom with her three children. She is unemployed.
12. Visit the child as often as DCF permits. The respondent has failed to satisfy this requirement, as discussed supra.
4. Finding regarding the feelings and emotional ties of the child withrespect to the child's parents, any guardian of the child's person andany person who has exercised physical care, custody or control of thechild for at least one year and with whom the child has developedsignificant emotional ties.
Kapell has no emotional bond to the respondent and does not especially enjoy her visits. He is bonded to his foster parents who, regrettably, are not willing to adopt him.
5. Finding regarding the age of the child.
Kapell is two years of age.
6. Finding regarding the efforts the parent has made to adjust suchCT Page 12233parent's circumstances, conduct or conditions to make it in the bestinterest of the child to return the child to the parent's home in theforeseeable future, including, but not limited to: (A) the extent towhich the parent has maintained contact with the child as part of aneffort to reunite the child with the parent; provided the court may giveweight to incidental visitations, communications or contributions, and(B) the maintenance of regular contact or communication with the guardianor other custodian of he child.
The respondent successfully completed an inpatient drug treatment program at the Institute of Living on October 23, 2000. However, she has not complied with random drug testing. She has failed to enhance her ability to parent, has failed to obtain adequate housing and legal income and has visited Kapell less than half as often as she could have.
7. Finding regarding the extent to which a parent has been preventedfrom maintaining a meaningful relationship with the child by theunreasonable act or conduct of the other parent of the child, or theunreasonable act of any other person or by the economic circumstances ofthe parent.
The respondent has not been prevented from maintaining a meaningful relationship with Kapell by the unreasonable act or conduct of Kapell's father or the unreasonable act of any other person or by her economic circumstances.
 B.
Although in determining whether to grant a petition to terminate parental rights the court is statutorily mandated to consider seven factors; General Statutes (Rev. 1999) § 17a-112 (d), now § 17a-112
(k); In re Tyscheicka H., 61 Conn. App. 19, 26, 762 A.2d 916 (2000); "[t]he trial court is vested with broad discretion in determining what is in the child's best interests . . . Conducting a best interest analysis is . . . purposefully broad to enable the trial court to exercise its discretion based upon a host of considerations." (Citations omitted; internal quotation marks omitted.) In re Alissa N., 56 Conn. App. 203,208, 742 A.2d 415 (1999), cert. denied, 252 Conn. 932, 746 A.2d 791
(2000). Notably, General Statutes § 17a-112 (p), expressly provides that the provisions of § 17a-112 "shall be liberally construed in the best interests of any child for whom a petition under this section has been filed." "The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment." (Internal quotation marks omitted.) Inre Shyina B., 58 Conn. App. 159, 167, 752 A.2d 1139 (2000). CT Page 12234
The deleterious effects of prolonged temporary placement on a child are well known. In re Juvenile Appeal (83-CD), 189 Conn. 276, 292,455 A.2d 1313 (1983). However, "[a]lthough subsequent adoption is the preferred outcome for a child whose biological parents have had their parental rights terminated . . . it is not a necessary prerequisite for the termination of parental rights. While long-term stability is critical to a child's future health and development . . . adoption provides only one option for obtaining such stability." In re Eden F., 250 Conn. 674,709, 741 A.2d 873, reargument den., 251 Conn. 924, 742 A.2d 264 (1999).
Kapell's best interests in sustained growth, development, well-being, continuity and stability of environment will best be served by terminating the respondent's parental rights and freeing him for adoption. Even if he were not adopted, the record fails to reflect any benefit to Kapell that would result from not terminating the respondent's parental rights. Compare In re Alissa N., supra, 56 Conn. App. 211 n. 5;In re Jennifer M., Superior Court, Child Protection Session at Middletown, Docket No. NOS-CP99-10689 (June 20, 2001); In re Shawn B., Superior Court, Child Protection Session at Middletown, Docket No. NOS-CP96-000407-A (November 2000). In reaching its best interests decision, the court has given due consideration to Dr. Humphrey's report on his psychological evaluation of the respondent and her interaction with Kapell.
 VII
The petition is granted and, thus, the court terminates the respondent's parental rights. The Commissioner of the Department of Children and Families is appointed statutory parent for Kapell for the purpose of securing a permanent adoptive family for him. The commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
Dated at Middletown this 20th day of August, 2001.
BY THE COURT
 Bruce L. Levin Judge of the Superior Court