[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The commissioner of the Department of Children and Families (DCF) filed a petition to terminate the parental rights of the parents of Christopher and Jonathan A. During the pendency of the petition, the court determined that reasonable efforts to reunite the family were not appropriate. Also, earlier in these proceedings, the father's parental rights were terminated based on his abandonment of his sons. The case against the mother was tried to the court. On July 18, 2002, after hearing from a prior guardian ad litem who recommended denying the petition and at the conclusion of closing arguments, the court made subordinate findings of fact, including the findings which the legislature, in General Statutes § 17a-112 (k), has mandated be made by the court in such proceedings. The court further found by clear and convincing evidence that two adjudicatory grounds on which to terminate parental rights had been proven. Specifically, the court found that the children had been denied, by reason of acts of maternal commission and omission, specifically sexual molestation and a pattern of abuse, the care, guidance and control necessary for their physical, moral and emotional well-being. See General Statutes § 17a-112 (j)(3)(C). The court also found that both children had been found to be neglected in a prior proceeding and that CT Page 10407 the mother had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the ages and marked special needs of the children, she could assume a responsible position in their lives. See General Statutes § 17a-112
(j)(3)(B). The court reserved decision on whether DCF had proven by clear and convincing evidence that it was in the best interests of the children that the mother's parental rights be terminated and ordered a transcript of counsel's arguments. The court now addresses the issue of best interests, that is, the dispositional aspect of this case.
When determining whether to grant a petition to terminate parental rights, the court is statutorily mandated to consider seven enumerated factors. General Statutes § 17a-112 (k); In re Tyscheicka H.,61 Conn. App. 19, 26, 762 A.2d 916 (2000). The seven factors, however, "serve simply as guidelines to the court and are not statutory prerequisites that need to be proven before termination can be ordered."In re Quanitra M., 60 Conn. App. 96, 104, 758 A.2d 863, cert. denied,255 Conn. 903, 762 A.2d 909 (2000). "The trial court is vested with broad discretion in determining what is in the child's best interests . . . Conducting a best interest analysis is . . . purposefully broad to enable the trial court to exercise its discretion based upon a host of considerations." (Citations omitted; internal quotation marks omitted.)In re Alissa N., 56 Conn. App. 203, 208, 742 A.2d 415 (1999), cert. denied, 252 Conn. 932, 746 A.2d 791 (2000). "The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of its environment." (Internal quotation marks omitted.) In re Shyina B., 58 Conn. App. 159, 167,752 A.2d 1139 (2000), quoting Schult v. Schult, 241 Conn. 767, 777,699 A.2d 134 (1997) "In addition, the genetic bond shared by a biological parent and her child, although not determinative of the issue of the best interest of the child, is certainly a factor to consider. (Internal quotation marks omitted.) In re Savanna M., 55 Conn. App. 807, 816,740 A.2d 484 (1999)
 Christopher
Christopher is ten years old. He is institutionalized at Harmony Hills in Rhode Island and is in physical restraints one to four times a day because of his behaviors. For this reason, DCF has not even sought a preadoptive home for him. Christopher was the victim of extreme sexual abuse by his mother.[1] The mother has not been permitted to visit either son for well over a year. When she did visit them, the boys exhibited "explosive behavior" after the visits, as attested by DCF social worker Vincent Tinnerello. Tinnerello not only was a credible witness but, from other evidence, the court finds that he had a uniquely strong relationship with the boys. CT Page 10408
The mother has poor insight into the problems of both of her sons, owing in part to her denial of her responsibility for their condition. Although Christopher was eager to visit with his mother and his brother on February 27, 2001, the visits have since been terminated and he no longer asks to see her.
Based on these facts, there could be no genuine argument as to whether termination of the mother's parental rights is in Christopher's best interests. The mother, however, observes, and the court finds, that she consistently visited Christopher as long as she was permitted to do so and that, when he lived with his mother, Christopher's condition was far better than it is now. When the mother last visited Christopher, he enjoyed the visit. As Christopher's therapist, Lynne St. Martin testified, Christopher's present condition could not be much worse.
Notwithstanding these additional facts, there is little to commend the continuation of the respondent's parental rights with respect to Christopher. The mother sexually abused Christopher. She has not accepted her responsibility for these acts. Christopher does not wish to see her and his condition is very fragile. "Although subsequent adoption is the preferred outcome for a child whose biological parents have had their parental rights terminated it is not a necessary prerequisite for the termination of parental rights." In re Eden F., 250 Conn. 674, 709,741 A.2d 873, rearg. denied, 251 Conn. 924, 742 A.2d 364 (1999). As St. Martin testified, closure is important to Christopher. "The psychological testimony from professionals is rightly accorded great weight in termination proceedings." (Internal quotation marks omitted.) In re KeziaM., 33 Conn. App. 12, 22, 632 A.2d 1122, cert. denied, 228 Conn. 915,636 A.2d 847 (1993). By clear and convincing evidence, the court finds that it is in Christopher's best interests that the respondent mother's parental rights be terminated.
 Jonathan
Like Christopher, Jonathan, who is 7 1/2, suffered severe sexual abuse by his mother. When she was permitted visit Jonathan, however, she visited him consistently. Jonathan, who is encopretic, suffered three psychiatric hospitalizations in 2001, and has disrupted from several placements.
Unlike Christopher, Jonathan has been placed with a foster father, Stuart B, for the past 9 1/2-months. Earlier in this placement, Mr. B had considerable difficulty controlling Jonathan. In the four months before trial, Jonathan was doing much better. However, Jonathan misses his brother and mother very much. He wants to return to his mother and be a CT Page 10409 family with her, his stepfather and his siblings. Indeed, as the mother argues, Mr. B stated that Jonathan cries every night for his mother and brothers. Jonathan also says that he wants to be adopted and to be part of a family.
Mr. B states that he and Jonathan do love each other. Although he is willing to be a foster parent for Jonathan "as long as it takes," however, he states that he is not yet ready to commit to adopting Jonathan. He may adopt Jonathan in the future, but does not know when. Thus, Mr. B's adoption of Jonathan is, at best, speculative.
As observed supra, the existence of a preadoptive placement is not a prerequisite to the termination of parental rights. The court also acknowledges, and has duly considered, that "in some circumstances it would be contrary to a child's best interest to sever his ties to a parent even though statutory cause to do so could be found. If, for instance, no prospective adoptive home were available, and a child was likely to be subjected to a number of short-term foster placements, a court might determine that maintaining a relationship even to a noncustodial and inadequate parent was preferable, for a given child, to having no parent at all. . . . [S]tudies of children in long-term foster care have provided evidence that suggests that `continued contact with the natural parent generally promotes the child's sense of well-being and emotional security' even for `children who were separated from their parents at a very early age and whose subsequent contacts with their parents are sporadic.' M. Garrison, `Why Terminate Parental Rights?' 35 Stan.L.Rev. 423, 461 (1983)." In re Jessica M., 217 Conn. 459, 466 n. 5, 586 A.2d 597 (1991); see also In re Alissa N., supra, 56 Conn. App. 211
n. 5.
Here, however, it cannot be said that Jonathan is likely to be subjected to a number of short-term foster placements. There are reasonable prospects that he will eventually be adopted, if not by Mr. B then by another family. Moreover, even if this is not the case, there is little reason to believe that Jonathan's periodic exposure to the parental perpetrator of his sexual abuse will engender in him a sense of well-being. This is so despite Jonathan's deep desire to see his mother. Indeed, as observed supra, when he and his brother were visiting with the mother, they exhibited explosive behaviors after visits. This is not a case where maintaining a relationship to a noncustodial and inadequate parent is preferable to having no parent at all. Jonathan's longing for his mother renders the disposition piteous. The mother, however, sexually abused Jonathan, has not admitted her transgressions and has not obtained appropriate treatment. To permit the continuation of the parent-child relationship would undermine whatever stability Jonathan has now attained as well as any hope for further stability in the future. CT Page 10410
Jonathan's interests in sustained growth, development, well-being, and continuity and stability of its environment lie with the success of his placement with Mr. B. Failing that, his best interests lie in being adopted by another family. Were Jonathan to resume visiting with his mother, there is little doubt that whatever placement he had would be disrupted. It is not in Jonathan's best interests for his mother to maintain even a vestige of parental rights. By clear and convincing evidence, the court finds that it is in Jonathan's best interests that his mother's parental rights be terminated.
The petition is granted. The court terminates the respondent mother's parental rights. The Commissioner of the Department of Children and Families is appointed statutory parent for Christopher and Jonathan. Stuart B shall be afforded the first opportunity to adopt Jonathan. The commissioner shall file with this court no later than 30 days following the date of judgment a written progress report of efforts to effect such permanent placement and file further reports every three months thereafter, as required by state and federal law.
Here, the evidence requires the court to go further. Pursuant to General Statutes § 46b-121 (b), DCF is ordered to resume sibling visits as soon as such visits are not therapeutically contraindicated. DCF's periodic reports to the court shall include a statement as to the plan for resuming sibling visits between Christopher and Jonathan, and the schedule for doing so. DCF is ordered to have both children examined by an independent psychologist or psychiatrist. The psychologist or psychiatrist shall examine the children and their records, and opine whether an alternative treatment or course of treatment is indicated. With respect to Jonathan, the psychologist or psychiatrist shall with all professional candor state whether the child would be better served by being transitioned to another therapist, who has expertise in sexually abused children. DCF's periodic reports to the court shall describe its efforts to comply with this order and with the recommendations of the independent psychologist or psychiatrist. The attorney for the children shall continue to represent the children's interests in these matters and shall act to ensure that there is compliance with the court's orders. He shall, if there is not compliance, request a hearing before the court to which he shall subpoena witnesses necessary for the court to determine the extent of noncompliance with its orders.
BY THE COURT
___________________________ Bruce L. Levin Judge of the Superior Court CT Page 10411